## Arthur STOWELL, Sr. v. Sheila BENNETT

[739 A.2d 1210]

No. 99-240

August 18, 1999. Plaintiff Arthur Stowell, Sr. appeals from an order of the superior court granting defendant Sheila Bennett's motion to disqualify Stowell's attorney, Robert Katims. Stowell contends the court erred in concluding that Katims' former representation of Bennett in an unrelated criminal matter required his disqualification. We agree and, therefore, reverse.

The material facts are undisputed. Stowell and Bennett had previously lived together with their two children in a trailer in Hinesburg. They were not married. After the parties separated, Bennett continued to live in the trailer with the two children. In November 1998, Stowell filed an action in superior court to regain possession of the trailer and its contents. He was represented by Attorney Katims.

Katims had previously represented Bennett in an unrelated criminal matter in district court, which was eventually dismissed in 1995.

In March 1999, Bennett moved to disqualify Katims from his representation of Stowell on the basis of his previous representation of Bennett. Bennett alleged that Katims was privy to confidences from the prior representation that might be used against her in the current litigation, and that his representation of her former boyfriend gave rise to the appearance of impropriety and lessened her confidence in the legal system. Stowell opposed the motion, arguing that the current lawsuit was entirely unrelated to the previous representation, and that no confidential communications had occurred that might disadvantage Bennett. Bennett subsequently acknowledged that she had not had any conversations with Katims when Stowell was not present. The trial court granted the motion without a formal hearing, citing EC 4-5 and 4-6 of the Vermont Code of Professional Responsibility.

Stowell thereupon filed a petition for extraordinary relief with this Court under V.R.A.P. 21(b). We granted the petition, noting that petitioner lacked any other adequate avenue of relief through interlocutory appeal or appeal from a final order.

A motion to disqualify counsel is a matter that rests within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion. See *In re Vermont Elec. Power Producers, Inc.*, 165 Vt. 282, 293, 683 A.2d 716, 722 (1996). The propriety of a lawyer representing a party in a lawsuit adverse to the interests of a former client is addressed in EC 4-5 and EC 4-6 of the Vermont Code of Professional Responsibility. EC 4-5 states, in part, that a "lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client

. . . . Care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another, and no employment should be accepted that might require such disclosure." EC 4-6 in part provides: "The obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment."

In *In re Themelis*, 117 Vt. 19, 23, 83 A.2d 507, 510 (1951), this Court observed that an attorney "should refrain from accepting any employment which may require him to do anything which will injuriously affect his former client in any matter in which he formerly represented him, and where he may be called upon in his new relation, to use against his former client, any knowledge or information acquired through his former connection."

Rule 1.9 of the Vermont Rules of Professional Conduct, which supersede the Code of Professional Responsibility in September 1999, sets forth standards governing the representation of interests adverse to former clients in terms substantively similar to *Themelis*. Thus, an attorney will be disqualified if he has accepted employment adverse to the interests of the former client "in the same or a substantially related matter." Vermont Rules of Professional Conduct, Rule 1.9(a); see also *State v. Crepeault*, 167 Vt. 209, 216-17, 704 A.2d 778, 783-84 (1997) (discussing scope of Rule 1.9). Furthermore, an attorney may not use information relating to the former representation to the disadvantage of the former client, except where the information has become generally known, or disclosure is otherwise permitted or required by the rules. See Vermont Rules of Professional Conduct, Rule 1.9(c).

Assessed in the light of these standards, the record here reveals no basis for the disqualification of Attorney Katims. First, there is no claim, nor any basis for concluding, that the current

action for possession of a mobile home is related in any respect to the criminal matter in which Katims formerly represented Bennett. Furthermore, Bennett virtually conceded below that she had never had any conversations with Katims during the criminal case when Stowell was not present. Therefore, Katims received no "confidential communications" which he might use to Bennett's disadvantage. See V.R.E. 502(a)(5) ("[a] communication is 'confidential' if not intended to be disclosed to third persons"); *State v. Martin*, 975 P.2d 1020, 1027 (Wash. 1999) (presence of third party during confidential communication generally vitiates privilege). Although courts frequently presume that confidential information was obtained during the former representation, the presumption arises only when the two matters were "substantially related." See *Crepeault*, 167 Vt. at 216, 704 A.2d at 783 (once substantial relationship is found, court need not inquire into whether attorney in fact received confidential information because such information is presumed). As noted, there is no claim that the former criminal matter was related to the current lawsuit.

Notwithstanding the absence of any potential use of confidential information to her disadvantage, Bennett has argued that disqualification was justified on the ground that Katims' representation of her former boyfriend undermined her faith in the integrity of the justice system and presented the appearance of impropriety. The importance of public faith in the integrity of the legal system is not an insignificant consideration. See *Crepeault*, 167 Vt. at 218, 704 A.2d at 784 (noting that integrity of legal process "suffers as much from the *appearance* as the substance of impropriety"). The Code of Professional Responsibility admonishes generally that a lawyer should "avoid even the appearance of professional impropriety," Canon 9, and act "in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession." Vermont Code of Professional Responsibility, EC 9-2. Although the new Rules of Professional Conduct do not expressly state that a lawyer should avoid the appearance of impropriety, other courts have concluded that the principle continues to apply "because its meaning pervades the Rules and embodies their spirit." *First American Carriers, Inc. v. Kroger Co.*, 787 S.W.2d 669, 672 (Ark. 1990).

Even under Canon 9, however, courts have generally rejected the argument that an appearance of impropriety, standing alone, is a sufficient ground for disqualification of an attorney. See, e.g., *Waters v. Kemp*, 845 F.2d 260, 265 n.12 (11th Cir. 1988); *Board of Education v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir. 1979); *Bergeron v. Mackler*, 623 A.2d 489, 494 (Conn. 1993). As the Connecticut Supreme Court has observed, "the appearance of impropriety alone is simply too slender a reed on which to rest a disqualification order except in the rarest of cases." *Bergeron*, 623 A.2d at 494 (internal quotation marks omitted). The reason for this reluctance to disqualify an attorney on the basis of appearance alone is that the former client's concerns are not the only interests at stake. In disqualification matters a court must also be "solicitous of a client's right freely to choose his counsel." *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978). A court must also be "mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel," and lose the benefit of counsel's familiarity with the case. *Bergeron*, 623 A.2d at 493.

Considered in the light of these competing considerations, we are not persuaded that the disqualification order in this case, where there was no indication that the attorney's representation risked violating any client confidences, was justified.

*Reversed.*