Filed 05/12/26

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-2547

| | |
|---|---|
| AMANDA MCCLARY,<br>        Plaintiff<br><br>        v.<br><br>UNIVERSITY OF VERMONT MEDICAL CENTER, TIMBER LANE PEDIATRICS, ESSEX RESCUE, VERMONT 911 BOARD, CITY OF ESSEX JUNCTION, and DARTMOUTH HITCHCOCK MEDICAL CENTER,<br>        Defendants | DECISION ON MOTIONS |

## RULING ON PENDING MOTIONS

Plaintiff Amanda McClary brings this action for various negligence, medical malpractice, emotional distress, and civil rights claims arising from injuries her minor son sustained after falling off a swing at an Essex Junction park. Now pending are motions to dismiss from each of the six defendants, as well as several other motions.

### Background

Plaintiff alleges that her minor child, Owen McClary, sustained significant head trauma and escalating neurological episodes after he hit his head from falling off a swing at Maple Street Park. The park is owned and operated by the City of Essex Junction. Plaintiff has sued the City as well as several medical providers and agencies involved in the subsequent treatment of Owen's injuries: the University of Vermont Medical Center ("UVM"), Timber Lane Pediatrics, Essex Rescue, Vermont Enhanced 911 Board, and Dartmouth Hitchcock Medical Center. She filed her original complaint on June 16, 2025, and her First Amended Complaint on June 27, 2025. Plaintiff's Second Amended Complaint (filed Aug. 8, 2025), which is the current operative complaint in this matter, alleges claims for medical malpractice, negligence, retaliation, and civil rights violations.

Plaintiff has since moved to amend her complaint for a third time. While she styles her proposed amendment as her proposed "second" amended complaint, it is in fact her Proposed Third Amended Complaint, and the Court refers to it as such.

In addition to the motions to dismiss filed by each Defendant and Plaintiff's motion to amend, there are other pending motions for the Court to resolve, including Plaintiff's motion to

waive the statutory certificate of merit requirement for her medical malpractice claims, her motion to disqualify counsel for the City of Essex Junction, the Department of Children and Families' motion to quash Plaintiff's subpoena, Plaintiff's motion for a temporary restraining order, and UVM's motion to file a sur-reply related to the TRO motion. The Court must also address Plaintiff's failure to obtain counsel for the claims brought on behalf of her son.

Discussion

1.  Failure to Retain Counsel for Minor Child's Claims

Plaintiff has not retained counsel in accordance with this Court's December 15, 2025 Order requiring her to do so within 60 days. Accordingly, all claims brought on behalf of Plaintiff's minor child are DISMISSED without prejudice.

2.  Remaining Claims in Second Amended Complaint

Dismissal of all claims brought on behalf of Plaintiff's minor child leaves only the "retaliation" claim and part of the "civil rights" claim that Plaintiff brings on her own behalf. Plaintiff alleges that Defendants "[r]etaliated against me for advocating for my child's care and documenting institutional failures – including by filing a bad faith report to DCF and attempting to discredit me during vulnerable medical episodes" and "[v]iolated civil rights through . . . retaliatory interference with my legal rights as a caregiver." Second Am. Compl. at 1. She further alleges that those "[c]ivil rights violations" include "retaliation, discrimination, and deliberate indifference toward . . . my documented advocacy efforts." *Id*. at 2.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court considers whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Davis v. Am. Legion, Dep't of Vt.*, 2014 VT 134, ¶ 12, 198 Vt. 204 (quoting *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309). The Court "must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514. The burden on plaintiffs under Vermont law is "exceedingly low" at the pleading stage. *Prive v. Vt. Asbestos Group*, 2010 VT 2, ¶ 14, 187 Vt. 280. As such, motions to dismiss for failure to state a claim are "disfavored." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575. "Nonetheless, where the plaintiff does not allege a legally cognizable claim, dismissal is appropriate." *Montague*, 2019 VT 16, ¶ 11.

These claims fail. First, the Second Amended Complaint does not indicate which of the six Defendants these claims apply to and the allegations are too vague to "show[] that the pleader is entitled to relief." V.R.C.P. 8(a).[1] While a complaint need not lay out every detail of the facts supporting the claim, *see Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 13, 184 Vt. 1, it must nevertheless "provide[] the defendant with notice of the claims against it." *Sutton v. Vt. Reg'l*

---

[1] The Proposed Third Amended Complaint, which the Court addresses later, implies that the "bad faith report to DCF" allegation is made against only UVM. Proposed Third Am. Compl. ¶¶ 75-88.

*Ctr.*, 2019 VT 71A, ¶ 20, 212 Vt. 612; *see also Gus' Catering, Inc. v. Menusoft Sys.*, 171 Vt. 556, 557, 762 A.2d 804, 806 (2000) (a pleading must "give[] fair notice of the claim and the grounds upon which it rests"). Aside from the alleged filing of a DCF report and the alleged "attempt[s] to discredit [her] during vulnerable medical episodes," the Second Amended Complaint includes no indication of how any of the defendants retaliated, discriminated, or acted indifferent toward Plaintiff. Her allegations fail to sufficiently notify Defendants what, exactly, the claims are.

Moreover, there is no private cause of action for "filing a bad faith report to DCF." Plaintiff cites a statute that prohibits physicians from "willfully making and filing false reports or records in his or her practice as a physician," 26 V.S.A. § 1354(8), but such conduct is regulated by the Board of Medical Practice and the statute does not establish a private cause of action. Nor is there a recognized private cause of action for "retaliatory interference with [] legal rights as a caregiver," and it is not clear what cognizable cause of action might encompass such an allegation. The alleged facts fall well outside the typical context that might support a retaliation claim under federal or state civil rights law. *See generally*, *e.g.*, *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023); *Hammond v. Univ. of Vt. Med. Ctr.*, 2023 VT 31, ¶¶ 24-25, 218 Vt. 250. As to the alleged "attempt[s] to discredit [her] during vulnerable medical episodes," it is unclear from the Complaint what that means, when such actions might have occurred, or who might have taken such actions. Accordingly, all remaining claims in the Second Amended Complaint brought on Plaintiff's own behalf are DISMISSED as to all Defendants.

3.  Plaintiff's Motion to Waive Certificate of Merit Requirement

Plaintiff has filed a motion to waive the certificate of merit requirement under 12 V.S.A. § 1042 for the medical malpractice/negligence claims asserted on behalf of her minor child. However, since the Court is dismissing all such claims without prejudice, the motion is MOOT.

4.  Proposed Third Amended Complaint

Plaintiff seeks to amend her complaint for the third time. While Vermont recognizes a liberal policy for permitting amendments to the pleadings, *see* V.R.C.P. 15(a); *Gauthier v. Keurig Green Mountain, Inc.*, 2015 VT 108, ¶ 43, 200 Vt. 125; *Hunters, Anglers & Trappers Ass'n of Vt. v. Winooski Valley Park Dist.*, 2006 VT 82, ¶ 17, 181 Vt. 12; *Lillicrap v. Martin*, 156 Vt. 165 (1991), denial of a motion to amend may be justified on grounds of futility. *Prive*, 2010 VT 2, ¶ 13. An "[a]mendment is futile if the amended complaint cannot withstand a motion to dismiss." *Vasseur v. State*, 2021 VT 53, ¶ 7, 215 Vt. 224. Plaintiff's effort to further amend her complaint is futile.

The claims in the Proposed Third Amended Complaint fail largely for the same reason most of the claims in the Second Amended Complaint fail – they are Plaintiff's minor child's claims, and Plaintiff has not obtained counsel to represent her son.

Plaintiff attempts to rehabilitate her "retaliation" claim by labelling it alternatively as "abuse of process" and adding the allegation that the "retaliatory conduct" included "dispatching law enforcement to Plaintiff's home during an ongoing medical crisis." 3rd Am. Compl. ¶ 122. But Plaintiff has not alleged any "illegal, improper[,] or unauthorized use of a court process" as

required to support a claim for the abuse of process tort. *Wharton v. Tri-State Drilling & Boring*, 2003 VT 19, ¶ 11, 175 Vt. 494. The dispatching of law enforcement allegation appears to relate back to the earlier allegation that "law enforcement officers were dispatched to Plaintiff's home on multiple occasions" and that the "presence of police during an ongoing medical crisis created additional intimidation, disrupted care, and compounded the emotional distress." 3rd Am. Compl. ¶ 74. To this Court's knowledge, law enforcement officers are often, but not always, dispatched to medical emergencies. Without more, that is simply not actionable conduct.

Plaintiff claims intentional infliction of emotional distress based on Defendants' alleged conduct of "deliberate withholding of abnormal test results, misclassification of seizures, sharing and discussing Plaintiff's and Owen's private medical information among themselves without informed consent, and using those communications to delay or deny appropriate care." 3rd Am. Compl. ¶ 126. However, none of these allegations rise to the level of "outrageous conduct" as contemplated by our Supreme Court and the Restatement. *See Davis*, 2014 VT 134, ¶ 19 (holding that a defendant's actions must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable."); *Restatement (Second) of Torts* § 46 cmt. d (1965).

Plaintiff also claims negligent infliction of emotional distress ("NIED"). But she cannot state a valid claim for NIED because she has failed to allege that she "suffered physical harm," or that she "was subject to a reasonable fear of immediate physical injury." *Jobin v. McQuillen*, 158 Vt. 322, 328, 609 A.2d 990, 993 (1992); *see also Zeno-Ethridge v. Comcast Corp.*, 2024 VT 16, ¶ 6, 219 Vt. 121 ("We [] generally limit recovery for emotional harm to cases with concurrent physical harms."); *Vaillancourt v. Medical Center Hosp. of Vt., Inc.,* 139 Vt. 138, 143, 425 A.2d 92, 95 (1980) (husband outside zone of danger could not recover for emotional distress caused by allegedly negligent care of wife during childbirth that resulted in death of fetus); *Guilmette v. Alexander,* 128 Vt. 116, 119-20, 259 A.2d 12, 14-15 (1969) (mother outside zone of danger could not recover for pain and suffering caused when she witnessed motorist negligently strike her daughter, causing severe injuries); *Nichols v. Cent. Vt. Ry.*, 94 Vt. 14, 18, 109 A. 905, 907 (1919) ("[T]here can be no recovery for mental suffering where there is no attendant physical injury.") (cited with approval in *Zeno-Ethridge*, 2024 VT 16, ¶ 6).

5. <u>Plaintiff's Motion for Temporary Restraining Order and/or Protective Order</u>

Plaintiff also seeks a temporary restraining order ("TRO") that would prohibit "Defendants" from "conducting unnecessary blood draws, genetic testing, imaging, or other invasive or unnecessary medical procedures on her minor son" without "independent clinical justification documented in writing" and "parental informed consent." Pl.'s Mot. for Temporary Restraining Order ¶ 1 (filed Aug. 29, 2025). In light of this request, the motion appears to be directed toward only the medical entity defendants.

Given the Court's dismissal of all claims in this matter, Plaintiff is not entitled to a temporary restraining order. Moreover, Plaintiff fails to demonstrate "from specific facts shown by affidavit . . . that *immediate and irreparable injury*, loss, or damage will result to" her in the absence of the requested relief. V.R.C.P. 65(a). Crucially, she cancelled the scheduled

4

September 10, 2025 appointment with a pediatric neurologist that was the purported basis for the urgency of her TRO request. Nor are there any grounds for temporary or preliminary injunctive relief here. *See generally Taylor v. Town of Cabot*, 2017 VT 92, ¶ 19, 205 Vt. 586. There is no threat of irreparable harm because, as demonstrated, Plaintiff can cancel appointments, decline tests she considers unnecessary, and seek medical care elsewhere. Moreover, the threats of harm she asserts in her affidavit are hypothetical and speculative. *See Walsh v. City of Newport*, No. 26-CV-1279, 2026 WL 921939, at *3 (Vt. Super. Ct. Mar. 02, 2026) (Thibault, J.) ("a plaintiff must show that the harm is 'actual and imminent, not remote or speculative'" (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002))). She cannot show a likelihood of success on the merits because determining whether medical tests or procedures are necessary would require expert testimony and Plaintiff has filed no certificate of merit. There is enormous potential harm to Defendants because the relief Plaintiff requests would require them to obtain independent written clinical justification before any test or procedure – a wholly unprecedented and unwarranted judicial interference with the medical profession. And there is no reason such relief would serve the public interest. The motion for a temporary restraining order is DENIED.

6. <u>UVM's Motion to File Sur-Reply</u>

UVM's motion to file a sur-reply is GRANTED, and the Court has considered that sur-reply in addressing the TRO motion.

7. <u>DCF's Motion to Quash Subpoena</u>

Given the disposition of the claims in this case, the Department for Children and Families' motion to quash Plaintiff's subpoena is MOOT.

8. <u>Motion to Disqualify Counsel</u>

Lastly, Plaintiff seeks to disqualify counsel for the City of Essex Junction. "Disqualification of counsel is a drastic measure, and the moving party bears the burden of supporting a motion to disqualify." *In re Watts*, 2024 VT 48, ¶ 26, 219 Vt. 598 (quotation omitted). There is no basis to disqualify counsel here. Plaintiff's prior communication with different counsel at the same firm about a separate matter is not a conflict of interest. *See generally* Vt. R. Prof. Cond. 1.9 (discussing duties to former clients). Plaintiff cancelled the initial consultation she had scheduled with Attorney Safar and never retained her, there was never an attorney-client relationship, and Attorney Safar never reviewed any of the documents that Plaintiff sent her. Moreover, the communications from Attorneys Safar and Monaghan are entirely professional; there is no indication of hostility, bias, discrimination, or anything that would warrant disqualification. While Plaintiff apparently takes issue with the "tone" of those communications, the language is what the Court would expect from attorneys zealously representing their clients and fulfilling their duties to the bar.

The Court is concerned, however, that Plaintiff's motion to disqualify contains fake quotations, possibly generated by artificial intelligence. Pl.'s Mot. to Disqualify Counsel at 3. Several of the quotations she provides do not exist in the cases to which she attributes them. *See, e.g., State v. Baker*, 2007 VT 84, ¶ 6, 182 Vt. 583; *In re Grismore*, 2024 VT 70, ¶ 17, 220 Vt. 202; *Kevlik v. Goldstein*, 724 F.2d 844, 851 (1st Cir. 1984).

It is apparent from Plaintiff's Reply that she does not understand the seriousness of providing fake cases or quotations to a court of law. Instead, she minimizes this conduct as merely "the practice of stretching, distinguishing, or testing the edges of case law" that "all advocates do." Pl.'s Reply at 2. Accordingly, the Court reminds Plaintiff that, by presenting a document to the Court, she is certifying that:

> to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

V.R.C.P. 11(b)(2). "A fake opinion [or quotation] is not 'existing law' and citation to a fake opinion [or quotation] does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023). Moreover, "[a]n attempt to persuade a court or oppose an adversary by relying on fake opinions [or quotations] is an abuse of the adversary system." *Id*. A "citation to fake, AI-generated sources . . . shatters [] credibility with [the] Court" and "imposes many harms, including wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few)." *Kohls v. Ellison*, No. 24-CV-3754 (LMP/DLM), 2025 WL 66514, at *4-5 (D. Minn. Jan. 10, 2025) (quotation omitted). As such, courts "do not, and should not, make allowances for a party who cites to fake, nonexistent, misleading authorities," and the consequences for doing so may be "steep." *Id*. at *5 (quotation omitted).

"Self-represented litigants 'receive some leeway from the courts' but are nonetheless bound by the ordinary rules of procedure, 'includ[ing] the obligations of Rule 11 and sanctions for noncompliance.'" *Rivard v. Windham State Att'y*, Case No. 25-AP-305, 2025 WL 3498177, at *2 (Vt. Dec. 2025) (unpub. mem.) (quoting *Zorn v. Smith*, 2011 VT 10, ¶ 22, 189 Vt. 219).[2] **Accordingly, Plaintiff "is warned that future conduct of this nature may result in sanctions."** *Id*.; *see also* V.R.C.P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may . . . impose an appropriate sanction upon the . . . parties that have violated subdivision (b) or are responsible for the violation.").

Order

For the foregoing reasons, Defendants' motions to dismiss the Second Amended Complaint (Mots. # 3, 5, 7, 9, 12, 14) are all GRANTED. Plaintiff's third motion to amend her complaint (Mot. # 6) is DENIED as futile.

---

[2] Trial courts are free to "consider three-justice decisions from [the Vermont Supreme] Court for their persuasive value, even though such decisions are not controlling precedent." *Washburn v. Fowlkes*, Case No. 2015-089, 2015 WL 4771613, at *3 (Vt. Aug. 2015) (unpub. mem.) (citing V.R.A.P. 33.1(d)).

In addition, all claims brought on behalf of Plaintiff's minor child are DISMISSED without prejudice.

Plaintiff's Motion to Waive Certificate of Merit Requirement (Mot. # 2) is MOOT. Plaintiff's motion for a temporary restraining order (Mot. # 11) is DENIED. Plaintiff's motion to disqualify counsel for the City of Essex Junction (Mot. # 8) is DENIED. Defendant UVM's motion to file a sur-reply (Mot. # 13) is GRANTED.

DCF's motion to quash Plaintiff's subpoena (Mot. # 10) is MOOT.

The City of Essex Junction's motion for judgment (Mot. # 15) is DENIED as moot in light of the Court's ruling above and the dismissal of all other claims in this action.

Electronically signed on May 12, 2026 at 9:58 AM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge